UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABDUL SHARIF, DIVINE ALLAH, and
JAMES WEST, individually and on behalf
of all other persons similarly situated,

                           Plaintiff,

vs.

BRIAN S. FISCHER, GLENN S. GOORD,
CHARLES M. DEVANE, LESTER N.
WRIGHT, M.P.H., STEPHEN BERNARDI,
ROBERT RAYMOND, JOHN H. NUTTALL,
THOMAS G. EAGEN, THOMAS M.
POOLE, LAWRENCE WEINGARTNER,
SHERYL ZENZEN, DANIEL WEINSTOCK,
J. PETER GREGOIRE, M.D., MENALLY,
NAPOLI, RITCHIECARTER, LAWRENCE
SEARS, JOHN R. DEMARS, PIPPEN,
R.N., GLEN CHAMPAGNE, M.D., LORI
MANTORY, MICHAEL GIAMBRUNO,
GERALD ELMORE, HABIB SHIEKY, M.D.,
MOHRNING, DAVE UNGER, JIM
LINDSAY, SHERRY MONTANARI,
ROBINSON, R.N., JAMES CONWAY,
SANDRA DOLCE, RICHARD APPS,
ROBERT ERCOLE, WILLIAM PHILLIPS,
ROBERT CUNNINGHAM, DELORES
THORNTON, FREDERICK BERNSTEIN,
TOTTEN, KAISER, ROBERT K. WOODS,
MARIA B. TIRONE, EVELYN WEISSMAN
and the NEW YORK STATE
DEPARTMENT OF CORRECTIONAL
SERVICES,

                           Defendants.
_____

05-CV-6504 CJS

DECISION and ORDER

## INTRODUCTION

Plaintiffs are wheelchair-bound current or former inmates of the New York State

Department of Corrections and Community Supervision ("DOCCS") who must self-catheterize

themselves multiple times per day in order to urinate.  Plaintiffs bring this action under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act, maintaining that they experienced violation of their federal civil rights, and discrimination on the basis of their disabilities, while housed at Five Points Correctional Facility ("Five Points"), Franklin Correctional Facility ("Franklin"), Wyoming Correctional Facility ("Wyoming"), Orleans Correctional Facility ("Orleans"), Attica Correctional Facility ("Attica"), Upstate Correctional Facility ("Upstate"), and Green Haven Correctional Facility ("Green Haven").  Now before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 241 & 242).  For the reasons discussed below, both motions are denied.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of the case.  On May 29, 2007, Plaintiff's filed their Third Amended Complaint ("TAC"), ECF No. 84, which is the operative pleading.  The TAC alleges that the three named plaintiffs, Abdul Sharif ("Sharif"), Divine Allah ("Allah"), and James West ("West") are "paraplegic" inmates who, along with other similarly-situated inmates, were denied appropriate medical care and "access to prison services, programs and activities" at the aforementioned correctional facilities.  Regarding the alleged denial of medical care, the TAC alleges that Defendants forced Plaintiffs, some or all of whom suffer from neurogenic bladder disorder, to use improperly-sized urinary catheters, causing pain and injury, and to re-use "disposable, single-use catheters," causing urinary-tract infections ("UTIs").  TAC at ¶ 16.  Regarding the alleged denial of "access," the TAC alleges that "Five Points, Franklin, Wyoming, Orleans, Attica, and Upstate . . . are[, due to having been improperly designed and constructed to accommodate wheelchair-bound inmates,] not accessible to Plaintiffs and the class they represent[, while ] Green Haven . . . is generally accessible, [but]

the Protective Custody Housing Unit within that facility is inaccessible[.]" TAC at ¶ ¶ 61-62.  The TAC indicates, for example, that "the showers in the cells at Five Points are inaccessible to Plaintiffs," since "there are lips at the entrances to the showers that prohibit Plaintiffs from safely entering the showers in their wheelchairs," and which resulted in Sharif falling off the shower seat and injuring himself.[1]

In addition to suing DOCCS, the TAC purports to sue forty-two DOCCS employees, in their individual and/or official capacities.   Of those forty-two defendants, sixteen are sued in their individual capacities only; three are sued in both their official and individual capacities; and the remaining twenty-three are sued only in their official capacities. TAC at ¶ ¶ 18-59.

The TAC indicates that, to the extent any defendant is sued in his or her individual capacity, it is solely with regard to claims for damages under Section 1983 by the three named Plaintiffs. *See*, TAC at ¶ 60 ("All defendants sued in their individual capacity are sued in that capacity solely for the purpose of the named plaintiff's claims for damages under 42 U.S.C. § 1983.").  In this regard, the TAC draws a distinction between the relief being sought on behalf of the three named Plaintiffs and the relief being sought by the proposed class members, stating: "Plaintiffs, *on behalf of the class* they seek to represent, seek injunctive and declaratory relief. The *named Plaintiffs* also seek, *inter alia*, monetary damages and reasonable attorneys' fees." TAC at ¶ 1 (emphasis added).

---

[1] *See also*, Cook Declaration, ECF No. 172-2 at p. 3 ("The DOCS Facilities' cells, toileting facilities, bathing facilities, strip rooms, yards, recreation areas and program areas are not accessible to Plaintiffs. (Third Am. Compl.  ¶64-70, 95-101, 106-116, 120-131, 135-136, 138-141, 143-145.) Members of the putative class have suffered physical injuries resulting from defendants' failure to provide proper sized urinary catheters, accessible showers, beds and other services. (Third Am. Compl. ¶¶ 16, 68, 71, 75, 80, 90-92, 103-104, 118, 133, 139, 145, 152.) They have suffered urinary tract infections as a result of defendants' policy requiring Plaintiffs, and the class they represent, to re-use disposable, single-use catheters. (Third Am. Compl. ¶¶ 16, 75, 90, 91-92, 103, 118, 133, 145, 15 2.) They have been denied access to the programs, services and activities run by defendants. (Third Am. Compl. ¶ 16, 81-84, 87-89, 102, 116-117, 127-132, 136.).").

Regarding the class claims for injunctive and declaratory relief, the TAC indicated that Sharif, Allah and West were seeking "to represent a class of individuals that ha[d] mobility disabilities and [were] currently housed in DOCCS facilities," and who "[were] being denied access to prison services, programs and activities and . . . not being provide[d] reasonable accommodations for their disabilities." Plaintiffs subsequently filed a timely Motion for Class certification, ECF No. 172, seeking certification of Plaintiff's claims for declaratory and injunctive relief (but not claims for money damages) on behalf of approximately 203 similarly-situated inmates. *See*, Memo of Law in Support of Motion for Class Certification, ECF No. 172-5 at p. 2 (Reiterating that the Class Members were injured by defendants "failing to make simple adjustments in the design of the cells, toilets, bathing facilities, strip rooms and other areas, and their refusal to provide adequate medical treatment.").

On October 4, 2019, the Court granted the Motion for Class Certification and certified the following class: "Plaintiffs and all prisoners in the custody of the New York State Department of Correctional and Community Supervision who suffer from a mobility disability limiting one or more of the prisoner's major life activities and that requires the use of a wheelchair." Decision and Order, ECF No. 213.

Following the completion of pretrial discovery, the parties filed the subject competing motions for partial summary judgment (ECF Nos. 241 & 242), on grounds which the Court will explore in detail below, after setting forth the relevant legal standards for such motions.

GENERAL PRINCIPLES APPLICABLE TO RULE 56 MOTIONS

The parties have moved for summary judgment, pursuant to Fed. R. Civ. P. 56, which may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party

seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

Additionally, the movant must demonstrate, and not merely assert, that he is entitled to judgment under the relevant principles of law. *See, Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 373 (W.D.N.Y. 2014) ("While the absence of any genuine dispute of material fact is a precondition for summary judgment, the crux of a summary judgment analysis is whether the movant has established entitlement to judgment as a matter of law.") (quoting 11–56 MOORE'S FEDERAL PRACTICE—CIVIL § 56.20 (Matthew Bender 2014)), adhered to on reconsideration, No. 11-CV-6119 CJS, 2016 WL 981858 (W.D.N.Y. Mar. 15, 2016); *see also*, *Darley v. U.S.*, No. 22-CV-00714 (PMH), 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) ("Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law.  Simply put, the movant must separately establish that the law favors the judgment sought.") (citations omitted).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986).[2] To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

"When parties cross-move for summary judgment, each motion is analyzed separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quoting *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020)).

DISCUSSION

Defendants' Motion for Partial Summary Judgment

Defendants' motion (ECF No. 241) initially purports to seek partial summary judgment on six separate grounds, described in the "Preliminary Statement" to Defendants' Memorandum of Law as follows:

> [(1)] Because the individual Defendants were not involved in any of the complained of issues, Plaintiffs' §1983 claims against them in their individual capacities should be dismissed. [(2)] Because the individual Defendants no longer work for DOCCS, Plaintiffs claims for declaratory or injunctive relief against them should be dismissed as moot. [(3)] Because Plaintiffs Abdul and Shariff are no longer in DOCCS custody, their claims for declaratory or injunctive relief should be

---

[2] "The substantive law governing the case will identify those facts which are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Heard v. City of New York*, 319 F.Supp.3d 687, 692 (S.D.N.Y. 2018).

dismissed as moot. [(4)] Because DOCCS and the individual Defendants are immune under the Eleventh Amendment, Plaintiffs' claims for monetary damages against them under §1983 should be dismissed. [(5)] Because individuals cannot be liable under the ADA or Rehabilitation Act, those claims should be dismissed as against the individual Defendants. [(6)] Because re-using catheters during the time at issue met the standard of care, claims relating to the reuse of catheters should be dismissed.

ECF No. 241-3 at p. 1 (numbering of grounds added).

Strangely, however, Defendants' memorandum of law discusses only three of those six grounds, (grounds (1), (4), and (5)), while ignoring the other three (grounds (2),(3) and (6)). More specifically, Defendants' legal memorandum, consisting of only seven pages, offers legal analysis of just the following three grounds: (1) that summary judgment should be granted on the Eighth Amendment Section 1983 claim, as to all individual defendants, since Plaintiffs cannot show personal involvement by any such defendant; (4) that summary judgment should be granted as to all claims for money damages against the State of New York and any individual defendants sued in their official capacities, due to Eleventh Amendment immunity; and (5) that summary judgment should be granted on the ADA and Rehabilitation Act claims as to all individual defendants, since individuals cannot be held liable under the ADA or Rehabilitation Act.

Even more strangely, the section of Defendants' memorandum pertaining to the alleged lack of "personal involvement" by defendants in the Eighth Amendment violation only discusses individuals who are not actual parties to this action. Specifically, the memo refers to "Defendants Coleman, Wilson, Burnett, and Rinere," who are not, and never have been, parties to this action. In this regard, it appears that Defendants' counsel was careless when "cutting and pasting" from a memorandum that he had previously submitted to the Court in a different action, *Land v. Salotti, et al*,. 6:18-cv-06516-EAW-MJP, in which he represented defendants named Coleman, Wilson,

Burnett and Rinere.[3]  In any event, Defendants' memo of law does not attempt to explain why the alleged actions of any particular *defendant in this action* would be insufficient as a matter of law to establish that person's personal involvement in the alleged Eighth Amendment violation.

Plaintiffs oppose Defendants' motion, *see, generally*, ECF Nos. 248 & 249, addressing only those three points which Defendants discussed.[4]  Plaintiffs contend, first, that insofar as Defendants' motion is based on lack of personal involvement in the alleged Eighth Amendment violation, it should be denied, since Defendants' argument on that point refers to individuals who are not parties to this action.

Plaintiffs alternatively maintain that this same aspect of Defendants' motion lacks merit in any event, since all of the Defendants sued in their individual capacities were personally involved in the alleged Eighth Amendment violation, by virtue of having been notified, through letters and grievances, of an "obvious risk" to Plaintiffs from the policy of providing them with insufficient and improperly-sized urinary catheters, which they then failed to correct.  In particular, Plaintiffs state:

> In medical treatment cases . . . [a] plaintiff can establish an official acted with deliberate indifference to inmate health through inference from circumstantial evidence, including from the very fact that the risk was obvious.  . . . Despite numerous grievances regarding the same, Defendants continued this practice for years. It cannot be seriously disputed that the risk of requiring Plaintiffs to endure

---

[3] *See, e.g.,* docket in *Land v Salotti*, ECF No. 68-4 at p. 5 (Defendants' memo of law in support of summary judgment motion).

[4] Although Plaintiffs' memo of law does not discuss Defendants' bald assertion that they are entitled to judgment on the merits of the "reusing single-use catheters claim," Plaintiffs submit an affidavit from urologist Ezekiel Young, M.D. ("Young"), ECF No. 249, disputing Defendants' assertion that re-use of such catheters is consistent with the standard of care.  Young states, rather, that "the well-known and standard practice of clean intermittent catheterization is to utilize single-use disposable catheters, and not to wash and reuse them." *Id*. at ¶ 5.  Young summarizes the opinions in his expert report by stating, in pertinent part: "Based upon my review of medical records of Plaintiffs, opposing opinions, manufacturer recommendations, inmate grievances, and medical review articles related to this case, it is my expert medical opinion that single-use, disposable catheters should never be reused under any circumstances, especially in a incarcerated setting." *Id*. at ¶ 12.

> this was anything but "obvious." In fact, the risk became objectively apparent to Defendants as Plaintiffs filed grievance after grievance relating to bleeding, pain, and UTIs caused as a direct result of these actions. Therefore, the individual defendants acted with a deliberate indifference towards Plaintiffs' health through subjecting Plaintiffs to risks that were obvious.

ECF No. 248 at p. 9 (citation and internal quotation marks omitted).

Plaintiffs also oppose Defendants' Eleventh-Amendment-Immunity argument, by pointing out that such immunity does not apply to claims such as theirs, seeking only prospective relief against state officials in their official capacities, but, rather, applies to claims for money damages against states and individuals sued in their official capacities. *See*, ECF No. 248 at pp. 11, 13 ("[U]nder the *Ex parte Young* exception to sovereign immunity, plaintiffs may bring suit against individuals in their official capacity provided that the suit is for prospective relief to end an ongoing violation of federal law. . . . The relief requested by Plaintiffs to remedy Defendants' statutory and Constitutional violations is prospective. Sovereign immunity therefore does not bar Plaintiffs' claims against state officials, sued in their official capacity, because those officials are responsible for committing ongoing violations of federal law under the ADA and Rehabilitation Act and under the 8th Amendment of the U.S. Constitution.") (citation omitted).

Plaintiffs further contend that Defendants' motion lacks merit insofar as it asserts that individual defendants cannot be sued under the ADA or Rehabilitation Act. Plaintiffs maintain, rather, that such claims are actionable where they are "against state officials in their official capacity and the relief sought . . . is prospective in nature," which is the case here, and that,

> the case law relied upon in Defendants' Memorandum of Law is either distinguishable or is no longer good law. The majority of the cases cited by Defendants in support of their claim cannot be liable under the ADA or Rehabilitation Act do not address individuals named in in their official capacities[, and] [t]he one case Defendants rely on that does address individuals named in their official capacities was overruled on appeal [by the Second Circuit in *Harris v. Mills*, 572 F3d 66, 73 (2d Cir. 2009).] . . . Contrary to Defendants' claims, it is well

9

established that ADA and Rehabilitation Act claims which seek prospective relief asserted against individual defendants in their official capacity are in no way precluded.

ECF No. 248 at pp. 13, 14 (citations omitted).

Defendants submitted a reply, ECF No. 251, which contends, first, that Plaintiffs have failed to come forward with evidence demonstrating that each of individual defendants was personally involved in the alleged Eighth Amendment violation.  Next, Defendants assert, also with regard to the alleged Eighth Amendment violation, not only that the individual defendants sued in their official capacities are immune from money damages under the Eleventh Amendment, but that the official capacity claims must be dismissed because none of the defendants sued in an official capacity is still employed by DOCCS. See, ECF No. 251 at p. 2 ("Plaintiffs cannot maintain an action against individuals in their "official capacities" for injunctive relief when the individuals no longer have those "official capacities".").  Defendants make this same argument about the ADA and Rehabilitation Act claims, namely, that none of the defendants sued in this action are still employed by DOCCS, and that the ADA claims and Rehabilitation Act claims against them therefore must be dismissed since those defendants have no authority to grant prospective relief.  Alternatively, Defendants assert that the Court should dismiss the ADA and Rehabilitation Act claims against individual defendants in their official capacities, since they are redundant of the claims against the State of New York.  Finally, the reply baldly reasserts that Defendants are entitled to summary judgment on the "re-use of single-use catheter" claim.[5]

---

[5] To be clear on this point, neither Defendants' initial brief nor their reply brief contains legal argument concerning the Eighth Amendment catheter claim.

*Defendants Have Failed to Carry Their Initial Burden to Demonstrate Their Entitlement to Judgement as a Matter of Law on Grounds (1), (2), (3), and (6).*

As a preliminary matter, the Court finds that Defendants have not met their initial burden on summary judgment to show their entitlement to judgement as a matter of law on four of the six grounds referenced in their motion.   In this regard, as mentioned earlier, Defendants' memorandum of law (ECF No. 241-3) lacks any legal analysis concerning grounds (2), (3), and (6).   Additionally, while Defendants' initial memo at least attempts to set forth relevant legal principles concerning ground (1), it fails to explain how those principles entitle any particular Defendant to judgment as a matter of law.

Moreover, to the extent Defendants have attempted to correct the deficiencies of their motion by raising new or different arguments in their reply brief, ECF No. 251, the Court, in fairness to Plaintiffs, declines to consider such arguments.  *See, e.g,. Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("An attempt is made in the Reply Brief to supply what was conspicuously omitted in the main Brief. The Reply Brief is almost three times as long as the main Brief and contains some citations to pertinent legal authority. However, new arguments may not be made in a reply brief, *see Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993), and we decline to entertain the theories so proffered.").[6]

Consequently, Defendants' motion is denied as to grounds (1), (2), (3), and (6). *See, e.g.*, *Freedman v. Am. Online, Inc.*, 303 F. Supp. 2d 121, 129 (D. Conn. 2004) ("Although Plaintiff seeks summary judgment on Counts Ten and Eleven as to the Town of Fairfield's liability under the theory of indemnification and the doctrine of *respondeat superior*, he cites no legal authority

---

[6] Defendants acknowledge this well-settled principal in their memo of law submitted in opposition to Plaintiffs' summary judgment motion. *See*, ECF No. 247-2 at p. 5 ("A reply brief should not, however, be used to cure a defective motion[.]").

and engages in no further discussion of these issues. Accordingly, summary judgment is denied to the Town of Fairfield Defendant.") (citation and footnote omitted); *see also, Heiden v. New York City Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 WL 171888, at *19 (S.D.N.Y. Jan. 11, 2023) (Denying summary judgment where defendant-movants failed to meet their initial burden on summary judgment by, *inter alia*, making only a two-sentence argument unsupported by any legal authority.); *Cea v. Access 23 TV*, No. 11-CV-3791 NSR, 2015 WL 5474070, at *2 (S.D.N.Y. Sept. 15, 2015) (Denying summary judgment, stating in pertinent part: "Defense counsel's submission bears little resemblance to a memorandum of law, and with the exception of describing the summary judgment standard applicable to the instant motion, cites no legal authority in support of any of his contentions. This "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of [D]efendant's counsel," *Wenzhou Wanli Food Co.*, 2000 WL 964944, at *3, and the Court declines to undertake such a task."); *Felton v. Monroe Cmty. Coll.*, 747 F. Supp. 3d 603, 610, n. 1 (W.D.N.Y. 2024) ("[I]t is not the Court's function to make or interpret arguments for a litigant.").[7]

> *Defendants Motion as to Ground (4) is Denied as Moot, Since Plaintiffs Are Not Seeking Money Damages Under Section 1983 Against New York State or Any Defendant Sued in an Official Capacity*

Ground (4) of Defendants' motion maintains that New York State and the Defendants sued in their official capacities have Eleventh-Amendment immunity from claims for money damages under Section 1983.  And, of course, it is well settled that such immunity would apply

---

[7] While the Court has, from reading Defendants' statement of facts and counsel's supporting affirmation, some inkling of the arguments that Defendants' counsel could have made, "[i]t is not the Court's job to construct [Defendants'] arguments for them—and, for that matter, Rule 56.1 statements are for facts, not legal arguments or conclusions." *McCalla v. City of New York*, No. 15CIV8002LAKAJP, 2017 WL 3601182, at *57 (S.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, No. 15-CV-8002 (LAK), 2017 WL 4277182 (S.D.N.Y. Sept. 22, 2017).

if Plaintiffs were asserting such claims. *See, e.g., Henry v. Lempke*, 680 F. Supp. 2d 461, 463 (W.D.N.Y. 2010) ("[I]t is well-settled that absent waiver by the State or valid congressional override, claims against state defendants in their official capacities for money damages are barred by the Eleventh Amendment.") (citations omitted).  However, Plaintiffs maintain that their claims under Section 1983 against DOCCS and Defendants in their official capacities seek only declaratory and injunctive relief, not money damages, and are therefore not barred by the Eleventh Amendment.[8]  Indeed, as noted earlier, the TAC indicates that Plaintiffs are suing for money damages under Section 1983 only against those Defendants sued in their individual capacities. *See*, TAC at ¶ 60 ("All defendants sued in their individual capacity are sued in that capacity solely for the purpose of the named plaintiff's claims for damages under 42 U.S.C. § 1983.").  Consequently, the Court finds that Defendants' argument on this point can be denied without further discussion, as having been unnecessarily made, since Plaintiffs are not seeking money damages under Section 1983 against DOCCS or the Defendants sued in their official capacities.

> *Defendants Motion as to Ground (5) is Denied Since Plaintiffs Can Sue Individual Defendants in Their Official Capacities For Declaratory and Injunctive Relief Under the ADA and Section 504*

---

[8] The Court agrees that such claims are not barred by the Eleventh Amendment. *See, e.g., Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 831 (2d Cir. 2025) ("[W]e hold that plaintiffs' claims seeking prospective declaratory and injunctive relief against Commissioner Seggos in his official capacity fall within the *Ex parte Young* exception to Eleventh Amendment sovereign immunity.").

Ground (5) of Defendants' motion asserts that insofar as Plaintiff's claims under the ADA and Rehabilitation Act are asserted against individual defendants, they must be dismissed since "individuals cannot be liable under the ADA or Rehabilitation Act," regardless of whether they are sued "personally" or "in their official or representative capacities." ECF No. 241-3 at p. 6. Notably, in making that argument, Defendants did not differentiate between claims for money damages and claims seeking other types of relief.  Plaintiffs dispute this, contending that the cases cited by Defendants are "either distinguishable or . . . no longer good law." ECF No. 248 at p. 14.  Plaintiffs argue, rather, that "[c]ontrary to [what] Defendants[ ]  claim[ ], it is well established that ADA and Rehabilitation Act claims which seek prospective relief asserted against individual defendants in their official capacity are in no way precluded."  In Defendants' reply memo, they now seem to concede that claims for injunctive and declaratory relief under the ADA and Rehabilitation Act may be asserted against defendants in their official capacities, but argue that such claims should be dismissed for a different reason, namely, that none of the Defendants sued in their official capacities are still employed by DOCCS.

This aspect of Defendants' motion is also denied.  In this regard, Defendants' initial memorandum of law argued simply that individual defendants could not be sued under the ADA or Rehabilitation Act, either in their individual or official capacities, which is incorrect. Defendants' alternate argument, about the claims failing since Defendants are no longer employed by DOCCS, was raised in the reply brief, but the Court has already indicated that it is not considering arguments discussed for the first time in Defendants' reply brief.   Additionally, even if the Court were to consider this new argument and agree with its premise, the remedy would not be to dismiss the ADA claims and Rehabilitation Act claims.  Rather, pursuant to Fed.

R. Civ. P. 25(d), when defendants sued in their official capacities retire, their successors are automatically substituted as parties.

In sum, for the reasons discussed above, Defendants' application for partial summary judgment is denied in its entirety.

Plaintiffs' Motion for Partial Summary Judgment

As mentioned above, Plaintiffs are also moving for partial summary judgment, ECF No. 242. Specifically, Plaintiffs' motion seeks partial summary judgment on their Eighth Amendment medical claim involving the re-use of improperly sized, single-use catheters.[9]  On this point,

---

[9] The Eighth Amendment claim has two aspects: issuance of improperly sized catheters and re-use of single-use catheters.

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, "applies to prison officials when they provide medical care to inmates." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs." *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 30 (2d Cir. 2023) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Such claims involve an objective element and a subjective element. "First, a plaintiff must show that the alleged deprivation is objectively sufficiently serious to constitute cruel and unusual punishment, and second, a plaintiff must show that the charged official acted with a sufficiently culpable state of mind." *Matzell v. Annucci*, 64 F.4th 425, 435 (2d Cir. 2023).

*** 

With respect to the subjective element, "[d]eliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

*Upson v. Wilson*, No. 22-2698-PR, 2025 WL 547455, at *2 (2d Cir. Feb. 19, 2025).

Plaintiffs maintain there is no dispute that Defendants required the class members to re-use such catheters, that the use of such catheters caused Plaintiffs to experience pain, internal injuries, and urinary tract infections, or that the re-use of single-use catheters was medically improper.

Regarding the alleged impropriety of forcing inmates to re-use single-use catheters, Plaintiffs' rely on the report of their medical expert, urologist Ezekiel Young, M.D. ("Young"), which indicates that the standard of care is *not* to re-use single-use catheters:

> DOCCS's policy of requiring Plaintiffs, and the class they represent, to reuse, single-use catheters, that were also frequently improperly sized, is well-below any accepted standard of care. In fact, Dr. Young, a Urologist serving as the Director of Pediatric Urology at John R. Oishei Children's Hospital, succinctly makes this point: "The well known and standard practice of clean intermittent catheterization is to utilize single-use disposable catheters, and not to wash and reuse them." Dkt. 232, "Dr. Young Report", p. 1. As Dr. Young notes, "[t]he overwhelming majority of urologists throughout the United States, as well as the rest of the industrialized world, prescribe and recommend for patients who require catheterization, to do so using single-use disposable catheters." Dr. Young Report, p. 1. "*This standard*", confirms Dr. Young, "*does not under any circumstances include a recommendation to wash and reuse catheters*." *Id*. at pp. 1-2 (emphasis added).

> DOCCS' policy of requiring the class to reuse, single-use catheters, is not only not consistent with medical standards, it is in fact the direct opposite of the medical standard. *Id*. at p. 2. As Dr. Young notes, though there are a few "controversial and unsettled studies on the re-use of catheters," these studies "fail to address how to effectively clean the catheter for re-use" and therefore cannot be relied upon to establish an alternative standard of care. Therefore, "[t]he well-established standard of medical practice is the onetime use and disposal of used intermittent catheters. Any policy to the contrary is considered not accepted among medical experts." *Id*. at p 2.

ECF No. 242-8 at pp. 5-6.[10]

Plaintiffs contend that even if the re-use of single-use catheters was theoretically an acceptable medical practice under ideal conditions, which they deny,[11] Defendants nevertheless violated that standard, since the incarcerated Plaintiffs had no ability to properly clean their catheters before re-using them:

> DOCCS did not even make an effort to provide adequate facilities to wash or sterilize the catheters that the class members were forced to re-use. The class were forced to try to wash dirty, used, disposable catheters within the confines of their cell, where there is a lack of available hot water or a sanitary place for them to hang and dry catheters after attempting to wash them. This is significant because "[n]o studies have examined the safety of re-using catheters for clean intermittent catheterization within incarcerated settings, where washing of catheters for re-use may be less feasible or less effective than in other settings." [Young Report] at p. 4. Therefore, even if safe re-use of disposable catheters were theoretically possible under ideal conditions, there is no genuine dispute that forcing inmates to reuse them in the prison setting where sterilization is not possible falls well below the standard of care.

ECF No. 242-8 at p. 6.

Plaintiffs further maintain that Defendants cannot demonstrate a triable issue of fact on this point, since the evidence upon which they rely, namely, the opinion of their expert witness, urologist Gabriel Haas, M.D. ("Haas"), is unreliable inasmuch as it is partially based on a misinterpretation or misstatement about one of its supporting documents:

> In an attempt to argue that single-use doesn't really mean single use, DOCCS relies entirely on the expert report of Dr. Gabriel P. Haas ("Dr. Haas") from 2005. "Dr. Haas Report" (Dkt. 235). The expert disclosure states that Dr. Haas will testify "that the United Kingdom National Health Service Trust Guidelines currently state

---

[10] Young's report does not offer any opinion as to whether the catheters provided to plaintiffs were improperly sized. Consequently, Plaintiffs' motion does not establish that they are entitled to summary judgment on that aspect of their Eighth Amendment claim.

[11] Dr. Young's expert report lists various reasons why washing and re-using a single-use catheter would be potentially harmful to an inmate patient.

that catheters may be re-used up to a week and provide instruction how to re-use catheters. The Trust's guidelines that Dr. Haas relies on are Exhibit D." Dkt. 235, p. 1, ¶ 4. Reviewing the "Trust's guidelines" relied upon by defendants' witness reveals two glaring inadequacies in that witness's opinion.

First, the Trust's guidelines that Dr. Haas relies on for the proposition that single-use catheters can be reused, attached as Exhibit D to Dr. Haas' Report, are just an excerpt. That excerpt comes from a section of the guidelines explicitly titled "Reusable Catheters." These are not the type of catheters at issue; single-use catheters are at issue.  Second, immediately preceding this section, is a section titled "Single-use catheters with coating or gel." In that section, the Trust's guidelines—relied upon by defendants' expert— state: "As the name suggests, these catheters are designed for single use . . ." (emphasis added). Accordingly, defendants' own expert and the documents relied upon thereby, confirm that single-use catheters should only be used once. A finding directly in contradiction with DOCCS' policy.

ECF No. 242-8 at pp. 6-7.

In sum, Plaintiffs maintain that Defendants' policy, under color of state law, of requiring inmates to re-use single-use catheters, in violation of the standard of care, which resulted in pain and infections, satisfies the objective "sufficiently serious" prong of the relevant deliberate indifference standard, which will be discussed further below.  Plaintiffs also contend that the subjective "deliberate indifference" prong of that standard is satisfied by Defendants' "pattern of inadequacy causing unwarranted suffering." ECF No. 242-8 at pp. 11-13; *see also, id*. at 13 ("A continuous pattern of repeated examples of deprivation of adequate medical care establishes a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures.") (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)).

Defendants oppose the motion, claiming, first, that Plaintiff's entire statement of facts is procedurally deficient, since it does not support each alleged fact therein with a citation to admissible evidence.  ECF No. 247-2 at p. 3.  Defendants assert that Plaintiffs' motion should be denied for this reason alone.

18

Defendants next argue that Plaintiffs' motion should be denied since it relies on Dr. Young's unsworn expert report, which "is not evidence." ECF No. 247-2 at p. 6. In particular, Defendants maintain that an unsworn expert report cannot support a summary judgment motion, without an accompanying affidavit from the expert. *Id*.

Defendants further maintain that Plaintiffs cannot demonstrate personal involvement by the individual defendants in the alleged Eighth Amendment violation. In doing so, however, Defendants again mistakenly discuss only persons who are not actual defendants in this action. *See*, ECF No. 247-2 at pp. 10, 11 (referring to "Defendants Coleman, Wilson, Burnett and Rinere").

Defendants next contend that the Eleventh Amendment bars Plaintiffs' Section 1983 claims against Defendants in their official capacities. ECF No. 247-2 at pp. 11-12.

Lastly, Defendants maintain that "individuals cannot be liable under the ADA or Rehabilitation Act." ECF No. 247-2 at pp. 12-13.

Plaintiffs have submitted a reply, ECF No. 250, stating in pertinent part, that their motion is properly supported by their attorney's declaration and by Dr. Young's report, and that they have cured any deficiency with Dr. Young's unsworn report by submitting a new declaration from him, "swearing to and reattaching his previously filed Expert Report." Plaintiffs also reiterate their belief that they are entitled to summary judgment since there is no material issue of fact, and, in this regard, they essentially indicate that the Court should treat Dr. Young's opinion as unopposed, purportedly since the contrary opinion of Defendants' expert, Dr. Haas, is unreliable:

> The only fact that DOCCS attempts to dispute is the last, arguing that forcing people to reuse, single-use catheters with no means of cleaning or sterilizing them is an acceptable medical practice—based solely on an expert opinion, but that is contradicted by the very study that it relies on for support. That study in fact confirms, contrary to DOCCS' expert, that "[a]s the name suggests, [single use] catheters are designed for single use". Plaintiffs' Motion, p. 7 (Dkt. 242) (emphasis

added). When an expert opinion is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero v. Warner-Lambert Co.*, 424 F3d 249, 253 (2d Cir 2005) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir.2002)).

ECF No. 250 at p. 3.

> *The Court Preliminarily Observes that Several of Defendants' Arguments in Opposition to Plaintiffs' Motion Can Be Summarily Rejected*

As a preliminary matter, the Court, much as it did in its discussion of Defendants' motion above, disregards, as lacking merit, that section of Defendants' memo of law discussing Plaintiff's alleged inability to show personal involvement by Defendants in the alleged Eighth Amendment violation, since it only discusses persons who are not actual parties to this action. Again, Defendants have not attempted to explain why the alleged actions of any particular defendant in this action would be insufficient as a matter of law to establish such person's personal involvement in the alleged Eighth Amendment violation.  The Court also disregards the argument in Defendants' opposition papers concerning individual liability under the ADA and Rehabilitation Act, since Plaintiffs are not moving for summary judgment as to such claims.  And, as discussed earlier, Defendants' position on that point is incorrect in any event.  The Court similarly disregards Defendants' Eleventh Amendment argument, since, as also discussed earlier, Plaintiffs are not suing the State or any Defendant in an official capacity for money damages.

> *The Court Finds That Plaintiffs' Motion Must Be Denied Since There Is A Triable Issue of Fact Concerning the Standard of Care*

Plaintiffs contend that they are entitled to summary judgment since the opinion of their medical expert, that re-using single use catheters violates the standard of care, is essentially

undisputed inasmuch as the contrary opinion of Defendants' expert is unreliable.  Defendants, meanwhile, counter that Plaintiffs' expert report should not be considered since it is unsworn.

The Court finds, first, that it may consider Dr. Young's expert report.  In that regard, Defendants are correct to point out that courts in this Circuit generally will not consider an unsworn expert report submitted in support of a summary judgment motion.  However, it is also well accepted that a movant may cure such a deficiency by resubmitting the expert report along with a sworn statement from the expert. *See, e.g., Mid-Town Laundry, LLC v. Pierce*, No. 117CV00338BKSTWD, 2021 WL 2417672, at *8 (N.D.N.Y. June 14, 2021) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used on a motion for summary judgment without additional affidavit support.  Courts have, however, found this defect curable through the submission of an affidavit or a declaration verifying the report's contents.") (citations and internal quotation marks omitted).  In the instant case, Plaintiffs cured the problem with their expert report by re-submitting the report along with a declaration from Dr. Young, sworn to by him "pursuant to 28 U.S.C. §1746, and under penalty of perjury." ECF No. 249 (Young Declaration and attached Report).  Consequently, since there would be no prejudice to Defendants, the Court will consider Young's report in support of Plaintiffs' motion.

Nevertheless, the Court finds that there is a triable issue of fact precluding summary judgment, due to the disagreement between the opinions of Drs. Young and Haas regarding the propriety of re-using single-use catheters.  In particular, Young opines that such catheters should never be re-used, while Haas indicates that they may safely be re-used. *Compare*, Young Declaration, ECF No. 249 at p. 3 ("[I]t is my expert medical opinion that single-use, disposable catheters should never be reused under any circumstances, especially in a incarcerated

setting.") with Haas Declaration, ECF No. 242-6 ("[I]t is my medical opinion that a disposable PVC catheter may be safely re-used by the same patient for weekly intermittent self-catheterization, provided the patient does not require sterile catheterization, the catheter is cleaned with soap and water and permitted to air dry after each use and the catheter remains in good condition.").

Plaintiff contends that the Court should preclude Haas's opinion as unreliable, under "*Daubert* and Rule 702," referring to *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. However, the Court disagrees, since Plaintiffs have neither made a proper motion to preclude under Fed. R. Evid. 702, nor otherwise shown that preclusion of Haas's opinion is warranted.[12] On this point,

> [t]he admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702 (amended 2011). In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court emphasized the "gatekeeping role" of district courts with respect to expert testimony, declaring that "the Rules of Evidence — especially Rule 702 — ... assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at

---

[12] Plaintiffs' memo of law in support of their motion for partial summary judgment contains no mention of Rule 702, *Daubert*, or preclusion. Rather, Plaintiffs moving memo merely asserts that Haas's report incorrectly represents what is contained in one of the supporting documents it cites. Plaintiffs only raised the issue of preclusion under *Daubert* and Rule 702 in their reply memo, and even then they did not set forth the proper legal standard for such a motion or attempt to make the required showing to obtain relief. *See, generally, Hunt v. CNH Am. LLC*, 857 F. Supp. 2d 320, 340-343 (W.D.N.Y. 2012) (setting forth relevant standard for preclusion), *aff'd*, 511 F. App'x 43 (2d Cir. 2013).

hand." *Id.* at 597; *see also Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 302 (S.D.N.Y. 2001) ("[The] proffered testimony ... must not only have a reliable foundation but also be relevant in that it 'fits' the facts of this case."). "The Rule 702 inquiry is a flexible one that depends upon the particular circumstances of the particular case at issue." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4077117, at *2 (S.D.N.Y. Aug. 1, 2016) (internal quotation marks omitted).

The focus of the Court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Ultimately, "expert testimony should be excluded if it is speculative or conjectural ... or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (internal quotation marks omitted). Additionally, the Court should not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). By contrast, "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Boucher*, 73 F.3d at 21 (internal quotation marks omitted). "[T]he traditional and appropriate means of attacking shaky but admissible evidence" are not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

*Swanson v. Schindler Elevator Corp.*, No. 21-CV-10306 (JMF), 2024 WL 967331, at *7 (S.D.N.Y. Mar. 6, 2024) (footnotes omitted).

In the instant case, Plaintiffs contend that Haas's entire opinion should be precluded as unreliable, since it is partially based on a mistaken reading of one of its supporting documents, "the United Kingdom National Health Service Trust Guidelines." However, even assuming that this critique is accurate, it does not show that Haas's overall opinion is unreliable. Rather, the Court finds that Plaintiffs' objection goes to the weight, and not the admissibility, of Haas's report. *See, e.g., McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (Rejecting argument that district court should have precluded expert medical opinion, where the expert "could not point to a single piece of medical literature" supporting his opinion, and finding instead that the

objection went to the weight and not the admissibility of the opinion, stating: "Fagelson is an experienced medical doctor, who is certified by the American Board of Otolaryngology and has practiced in the specialty of ears, nose and throat since 1966. We find his background sufficient to permit his expert testimony on a throat ailment and its causes. Fuller's suggestion that Fagelson had to be a specialist in environmental medicine to provide expert testimony in this case is an unwarranted expansion of the gatekeeper role announced in *Daubert*.") (citations omitted). Accordingly, Plaintiffs' request for preclusion of Haas's expert report is denied.

Consequently, there are triable issues of fact concerning Plaintiffs' Eighth-Amendment catheter claim.[13] Specifically, contrary to both Young's opinion that it was clearly improper to require Plaintiffs' to re-use single use catheters and Plaintiffs' *assertion* that such re-use caused their urinary tract infections, Haas indicates that such catheters may be safely re-used, and that urinary tract infections are not necessarily caused by such re-use. *See, e.g.*, Haas Declaration at ¶ ¶ 8-9 (Indicating that research shows both that there is little difference in the rates of urinary tract infection between sterile catheterization, involving the single use of a catheter, and "clean intermittent" catheterization involving the re-use of a catheter, and that the primary cause of urinary tract infection is failing to empty the bladder on a regular basis). Moreover, despite Young having reportedly reviewed Plaintiffs' medical records, neither his expert report nor his supporting declaration opines that Plaintiffs were given and/or injured by improperly-sized catheters, or that Plaintiffs' urinary tract infections resulted from re-using single-use catheters. Plaintiffs have therefore not shown that they are entitled to partial summary judgment.

---

[13] Plaintiffs' claim of entitlement to summary judgment hinged on the Court precluding Haas's report.

CONCLUSION

For the reasons discussed above, the parties' competing motions for partial summary judgment (ECF Nos. 241 & 242) are denied.

SO ORDERED.

CHARLES J. SIRAGUSA
United States District Judge

DATED:   April 28, 2025
             Rochester, New York