UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ABDUL SHARIFF, DIVINE ALLAH, and
JAMES WEST, *individually and on behalf
of all other persons similarly situated*,

                 Plaintiffs,

      v.

GLENN S. GOORD, *et al.*,

                Defendants

———————————————————————

**DECISION AND ORDER**

6:05-CV-06504 CJS CDH

## **INTRODUCTION**

The Court has certified this matter as a class action brought on behalf of "Plaintiffs and all prisoners in the custody of the New York State Department of Correctional and Community Supervision ["DOCCS"] who suffer from a mobility disability limiting one or more of the prisoner's major life activities and that requires the use of a wheelchair." (Dkt. 213 at 10). Named Plaintiffs Abdul Shariff, Divine Allah, and James West ("Plaintiffs") contend, among other things, that the defendants (consisting of DOCCS and more than 40 of its individual employees[1]

---

[1]    As the Court noted at the oral argument held in this matter on April 9, 2026, defendant Lawrence Weingartner had been listed on the docket as appearing *pro se* since November 9, 2024. (*See* Dkt. 265). Defendants' counsel filed a notice of appearance on behalf of Mr. Weingartner on April 21, 2026. (Dkt. 266). On that same day, Defendants' counsel filed a status report noting that his failure to appear for Mr. Weingartner upon inheriting this case from former defense counsel (Dkt. 161) was due to oversight and that his notice of appearance listing the parties "Weingertner" and "Winegardner" was in fact meant as an appearance on behalf of Mr. Weingartner (*see* Dkt. 252 at 1; *see also* Dkt. 265; Dkt. 267 at 1).

("Defendants")) denied them and the other members of the class access to prison services and proper medical care by forcing them to use improperly sized urinary catheters and to reuse "disposable, single-use catheters," which caused urinary-tract infections ("UTIs"). (Dkt. 84 at ¶ 16; *see also* Dkt. 254 at 2). Plaintiffs allege claims pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and 42 U.S.C. § 1983. (Dkt. 84; Dkt. 172).

Currently before the Court is Plaintiffs' motion to preclude the report and testimony of Defendants' expert, Gabriel Haas, M.D., pursuant to Federal Rule of Evidence ("FRE") 702. (Dkt. 260). For the reasons set forth below, Plaintiffs' motion is denied.

## BACKGROUND

This matter has been referred to the undersigned for all non-dispositive pretrial proceedings. (Dkt. 258; *see also* Dkt. 51; Dkt. 214; Dkt. 227). The operative pleading is the third amended complaint, filed May 29, 2007. (Dkt. 84). The Court assumes the parties' familiarity with the extensive factual and procedural background of this matter for purposes of this Decision and Order. The facts and procedure salient to the instant motion are summarized below.

On March 21, 2023, Defendants disclosed Dr. Haas as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). (Dkt. 235). The disclosure attaches four exhibits: (A) a declaration dated December 15, 2005, along with its exhibits, made by Dr. Haas in opposition to Plaintiffs' motion for a preliminary

injunction (the "Haas Report")[2] (*see* Dkt. 60; Dkt. 235 at 4-8); (B) Dr. Haas's updated

curriculum vitae; (C) an excerpt from an article posted on the University of California

San Francisco Benioff Children's Hospital's website describing the practice of clean

intermittent catheterization ("CIS") and clean intermittent self-catheterization

("CISC"); and (D) excerpts from the United Kingdom National Health Service

Foundation Trust Guideline for the Management of Teaching of Clean Intermittent

Self-Catheterisation (the "NHS Guidelines")[3] (Dkt. 235 at 127-31; *see* Dkt. 262-3 at

16). The Haas Report sets forth Dr. Haas's expert opinions regarding catheter use

and UTIs. In the Haas Report, Dr. Haas opines that:

> [W]hen a medical instrument is labeled single use only . . . [it] is
> expected to be packaged sterile and is not expected to be re-sterilized for
> re-use as a sterile instrument or in a sterile environment. . . . The re-use
> of a sterile disposable single use only [catheter] by a single patient for
> non-sterile catheterization after cleaning [with soap and water] and
> drying would be consistent with common medical practices. . . . [T]he
> most important factor in preventing urinary tract infections is emptying
> the bladder . . . before it becomes overstretched [so] there is little chance
> of infection.

(Dkt. 235 at 5-6) (quotations omitted). On August 26, 2025, Plaintiffs deposed Dr.

Haas. (Dkt. 262-1 at 2). During this deposition, Dr. Haas described the practice of

CISC and reiterated the Haas Report's opinions.

The parties previously filed competing motions for summary judgment. (Dkt.

---

[2]    Plaintiffs primarily refer to this declaration as Dr. Haas's expert report and opinion. (*See, e.g.,* Dkt. 260-3 at 7). Unless otherwise stated, references to the Haas Report in this Decision and Order include the opinions it provides.

[3]    A copy of the full NHS Guidelines can be found at Docket No. 242-7.

241; Dkt. 242)[4]. In their motion for summary judgment, Plaintiffs argued in part that there were "two glaring inadequacies" in Dr. Haas's opinions: (1) that Dr. Haas referred to only an excerpt from the NHS Guidelines; and (2) that Dr. Haas's opinions are inconsistent with the NHS Guidelines. (Dkt. 242-8 at 12).

In a Decision and Order dated April 28, 2025, United States District Judge Charles J. Siragusa denied the parties' respective motions for summary judgment. (Dkt. 254). Judge Siragusa explained that Plaintiffs' motion for summary judgment "hinged" on the Court precluding the Haas Report. (*Id.* at 24 n.13). Judge Siragusa noted that Plaintiffs had not made a proper motion to preclude under FRE 702 and further concluded that they had not "otherwise shown that preclusion of Haas's opinion is warranted." (*Id.* at 22). Judge Siragusa considered Plaintiffs' argument that the NHS Guidelines contradict the Haas Report, but found that "even assuming that critique is accurate," the alleged contradiction "does not show that Haas's overall opinion is unreliable." (*Id.* at 23). Instead, Judge Siragusa held that "Plaintiffs' objection goes to the weight, and not the admissibility, of Haas's report." (*Id.*).

On December 2, 2025, Plaintiffs filed the instant motion pursuant to FRE 702, seeking to preclude the Haas Report and Dr. Haas's expert testimony. (Dkt. 260 at 1; Dkt. 260-3 at 5, 7). Plaintiffs argue that the Haas Report fails to meet the standard set forth in FRE 702 because: (1) it contradicts itself and Dr. Haas's deposition testimony; (2) the NHS Guidelines contradict the Haas Report; (3) Dr. Haas ignores

---

[4]     Plaintiffs' motion sought "partial summary judgment on their Eighth Amendment medical claim involving the re-use of improperly sized, single-use catheters." (Dkt. 254 at 15).

essential facts such as prison conditions, DOCCS policies regarding catheter reuse, and Plaintiffs' medical records showing repeated UTIs; and (4) Dr. Haas has not personally visited a DOCCS jail cell or conducted a scientific study of catheter use but has merely "review[ed] a handful of publications." (Dkt. 260-3 at 5, 15-17). These flaws, Plaintiffs assert, mean the Haas Report "would not be helpful to the factfinder and [that it] does not reflect a[n] . . . application of reliable principles and methods." (*Id.* at 14).

On December 30, 2025, Defendants filed their opposition. (Dkt. 262). Plaintiffs filed a reply on January 13, 2026. (Dkt. 263). The Court held oral argument on April 9, 2026, and reserved decision. (Dkt. 265).

## DISCUSSION

### I.    Scope of Magistrate Judge Authority

While "motions to exclude expert testimony are in the nature of motions ordinarily made shortly before trial, as motions *in limine*," they may also be made in other contexts. *Sec. & Exch. Comm'n v. AT&T, Inc.*, 626 F. Supp. 3d 703, 740-41 (S.D.N.Y. 2022). Courts in this Circuit consider motions to exclude expert opinions and testimony non-dispositive and therefore within a magistrate judge's authority to decide under 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *McDay v. Eckert*, No. 1:20-CV-233-JLS-JJM, 2026 WL 376730, at *10 (W.D.N.Y. Feb. 11, 2026) ("Motions regarding the admissibility of expert testimony are non-dispositive.") (citing *Lutz v. Kaleida Health*, No. 1:18-CV-01112, 2023 WL 6617737, *1 (W.D.N.Y. Oct. 11, 2023)); *Baldi-Perry v. Emerson Elec. Co.*, No. 1:22-CV-400-JLS-JJM, 2025 WL 601232, at *1 n.2 (W.D.N.Y.

Feb. 25, 2025) ("motions regarding the admissibility of expert testimony are non-dispositive"); *Moreland v. Sportsman's Guide, Inc.*, No. 17-CV-1034-LJV, 2024 WL 2826476, at *1 n.1 (W.D.N.Y. June 4, 2024) ("As Judge McCarthy correctly observed, the motion [to preclude expert testimony] is non-dispositive." (quotation and alterations omitted)); *Woelfle v. Black & Decker (U.S.) Inc.*, No. 1:18-CV-486, 2023 WL 4407577, at *8 (W.D.N.Y. July 7, 2023) ("A motion to exclude expert testimony is not a dispositive motion."); *U.S. v. Bon Secours Health Sys., Inc.*, No. 10 CIV. 9650 (RMB), 2023 WL 1992639, at *2 (S.D.N.Y. Feb. 14, 2023) ("A magistrate judge's decision to admit or exclude expert testimony is considered nondispositive of the litigation.") (internal quotations omitted).

Some magistrate judges in this Circuit, however, have issued a Report and Recommendation where precluding an expert's opinion would necessarily be case-dispositive. *See Bennett v. Target Corp.*, No. 16-CV-5816-ADS-SIL, 2018 WL 5784354, at *1 n.1 (E.D.N.Y. Nov. 5, 2018) ("In an abundance of caution, the Court issues the portion of this decision addressing the parties' respective motions to preclude expert testimony on a Report and Recommendation basis even though such motions are typically considered non-dispositive. Plaintiff here has asserted a claim for defective design, which, under New York law, requires expert testimony to proceed. Thus, a decision altogether precluding the expert testimony relied upon by [the plaintiff] would necessarily be dispositive in nature.") (internal citations omitted); *see also Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 229 n.3 (E.D.N.Y. 2014) ("In the Eastern District of New York, magistrate judges are generally empowered to act

with respect to non-dispositive pretrial matters, such as motions to exclude expert testimony under Federal Rule of Evidence 702 and *Daubert*. However, . . . defendant's *Daubert* motion is potentially dispositive, given that a ruling precluding plaintiff's only liability expert witness would likely require dismissal of plaintiff's claim.") (internal citations omitted)).

Here, a determination that Dr. Haas's testimony should be precluded would not necessarily be case dispositive. This is not a situation in which a defendant has sought to preclude a plaintiff's only expert witness with respect to an issue on which the plaintiff bears the burden of proof and expert testimony is required by law. Even in the absence of Dr. Haas's testimony, it would be a question for a trier of fact as to whether Plaintiffs have proven their theory of the case. Further, the third amended complaint contains claims in addition to those related to the reuse of urinary catheters. In particular, Plaintiffs claim that Defendants "failed to make [DOCCS] facilities accessible to plaintiffs, and have failed to furnish appropriate auxiliary aids and services where necessary to afford plaintiffs and members of the putative class the opportunity to participate in the programs, activities, services, benefits and jobs they offer generally to other non-disabled individuals under defendants' custody and control." (Dkt. 84 at ¶ 153). The third amended complaint identifies numerous alleged deficiencies in DOCCS' facilities with respect to access for inmates who are wheelchair users. (*See, e.g., id.* at ¶¶ 63-144; *see also* Dkt. 254 at 2-3). Dr. Haas's opinions are unrelated to these claims.

Accordingly, and consistent with the case law set forth above, the Court's resolution of the instant motion is set forth in a Decision and Order.

## II.   Motion to Preclude Dr. Haas's Report

### A.   Legal Standard

FRE 702 "governs the admissibility of expert testimony." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016). Pursuant to FRE 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), that trial courts serve a "gatekeeping" function under FRE 702 and must ensure that proposed expert testimony "rests on a reliable foundation and is relevant[.]" *Id.* at 597. Under *Daubert* and its progeny, "[a] court's inquiry . . . focuses on three issues: (i) whether the witness is qualified to be an expert; (ii) whether the opinion is based upon reliable data and methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact." *Pac. Life Ins.*

*Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (citing *Nimely v. City of N.Y.*, 414 F.3d 381, 396-97 (2d Cir. 2005)).

In addition to "these canonical *Daubert* requirements," the Court also must consider the impact of Congress's 2023 amendment to Rule 702. *Connecticut v. Sandoz, Inc.*, No. 3:20-CV-00802-MPS, 2025 WL 3226616, at *2 (D. Conn. Nov. 19, 2025). The 2023 amendment "made clear that: (1) a preponderance of the evidence standard applies to questions of admissibility under Rule 702; and (2) expert testimony 'must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.'" *Id.* (quoting Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment); *see also Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, No. 17-CV-6980 (NG) (JRC), 2025 WL 1907206, at *2 (E.D.N.Y. July 10, 2025) (explaining that the 2023 amendment did not impose any new procedures and that "prior authority construing Rule 702 remains relevant").

When determining whether an expert applied reliable methodologies, courts assess several factors. Such factors may include "the theory's testability, the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quotations omitted). This assessment is flexible and such factors "do not constitute a definitive checklist or test." *Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017). In appropriate cases, courts in this Circuit have found that an expert's background and

experience may serve as a basis to conclude their opinions are based on reliable methodologies. *See, e.g., Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 466 (S.D.N.Y. 2024) ("The Court finds that [the plaintiff's expert]'s opinions, as permitted herein, are based upon sufficient facts and reliable principles and methods drawn from his background, including relevant experience. [The plaintiff's expert] has decades of experience in the insurance industry. . . . [The plaintiff's expert]'s opinions regarding industry practice . . . is based upon that experience.") (citations omitted).

After determining that an expert is qualified and that their opinion is based on reliable data and methodology, a court must assess whether the proposed testimony "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 591-92 ("Rule 702's helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." (quotation omitted)). "This inquiry looks primarily to whether the testimony is relevant." *Pac. Life*, 571 F. Supp. 3d at 114. Under FRE 401, evidence is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. Expert testimony is also subject to FRE 403, which allows the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The Rule 403 inquiry is particularly important in the context of expert testimony, 'given the unique weight such evidence may have in a

jury's deliberations.'" *Pac. Life*, 571 F. Supp. 3d at 114 (quoting *Nimely*, 414 F.3d at 397).

"Ultimately, the party proffering the expert has the burden to demonstrate by a preponderance of the evidence that its expert witness satisfies [the FRE 702] criteria." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015) (quotation and alteration omitted). "[O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." Fed. R. Evid. 702, Advisory Committee Note to 2023 Amendment. District courts are afforded "broad discretion" to determine the admissibility of expert testimony. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995).

In this Circuit, "the rejection of expert testimony is the exception rather than the rule." *Saxon Glass Techs., Inc. v. Apple Inc.*, 393 F. Supp. 3d 270, 284 (W.D.N.Y. 2019), *aff'd,* 824 F. App'x 75 (2d Cir. 2020). Rather than exclusion, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Further, in making its inquiry, the Court "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the . . . court's belief as to the correctness of those conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

B.  **Dr. Haas's Qualifications**

Plaintiffs' motion papers do not argue that Dr. Haas is unqualified to serve as an expert witness in this case, and during oral argument Plaintiffs' counsel confirmed that Plaintiffs do not dispute his qualifications. Indeed, Dr. Haas's updated curriculum vitae sets forth his extensive qualifications in the field of urology. (*See* Dkt. 235 at 66-125).

Dr. Haas received his M.D. from Wayne State University in 1982. (*Id*. at 68). He completed residencies in surgery and urology at Henry Ford Hospital and was a clinical associate in the urology section at the National Cancer Institute. (*Id*). Dr. Haas has maintained certification by the American Board of Urology since February 18, 1989, and is licensed in both New York and Michigan. (*Id*.).

Dr. Haas is currently the Senior Medical Director for Uro-Oncology at Astellas Pharma Global Development Inc. and a Clinical Professor of Urology at the Loyola University Stritch School of Medicine. (*Id*. at 66). He previously served as Professor and Chairman of the Department of Urology at the State University of New York, Upstate Medical University from 1995 to 2009. (*Id*.).

Dr. Haas is the Editor-in-Chief of the Canadian Journal of Urology. (*Id*.). He has also authored or co-authored scores of articles and book chapters, won awards, and participated in numerous professional societies and committees in the field of urology. (*Id*. at 67-104). During his deposition, Dr. Haas testified that he has experience working in prison medical facilities, such as in the Marcy Correctional

- 12 -

Facility, and instructed around 100 incarcerated people over the course of 14 years on how to perform CISC. (Dkt. 262-1 at 25, 34, 52-53; *see* Dkt. 235 at 6).

These qualifications "suffice to establish the basis for [Dr. Haas's] specialized knowledge . . . required to admit his expert testimony under Rule 702." *Rahman v. Lee*, No. 23-CV-5665 (LAP), 2024 WL 4043697, at *5 (S.D.N.Y. Sept. 4, 2024); *see also McCullock*, 61 F.3d at 1043 ("[The plaintiff's expert] is an experienced medical doctor, who is certified by the American Board of Otolaryngology and has practiced in the specialty of ears, nose and throat since 1966. We find his background sufficient to permit his expert testimony on a throat ailment and its causes."). They also inform the Court's inquiry into the reliability of his data and methodology.

Indeed, courts in this Circuit have consistently held that an expert's background and experience may serve as a basis to conclude that their opinions are based on reliable data and methods and thus are admissible under FRE 702. *See, e.g.*, *Suffolk Cnty.*, 2025 WL 1907206, at *3 ("To begin with, [the plaintiff's expert] is highly qualified to offer his opinions. . . . The more qualified the expert, the more likely that expert is using reliable methods in a reliable manner.") (quotations, alteration, and citation omitted); *Mobile Med. Int'l Corp. v. Advanced Mobile Hosp. Sys., Inc.*, No. 2:07-CV-231, 2015 WL 778553, at *5 (D. Vt. Feb. 24, 2015) ("[The plaintiff's expert] intends to testify about surgical facilities and equipment in use in the 1980s. . . . The persuasiveness of his conclusions and the weight given thereto are questions for the trier of fact. . . . His opinions . . . are admissible to the extent they are based upon his specialized knowledge of the relevant time period[.]") (citation

omitted). Accordingly, when assessing the admissibility of Dr. Haas's expert testimony, the Court has taken into account his extensive qualifications in the field of urology.

### C.    Reliability of Dr. Haas's Data and Methodology

The Court next considers Plaintiffs' challenges to the reliability of Dr. Haas's data and methodology. Plaintiffs contend that the Haas Report is "facially self-contradictory" on the issue of "whether it is medically acceptable to force Plaintiffs to reuse single-use catheters." (Dkt. 260-3 at 14). More specifically, Plaintiffs argue that Dr. Haas "concedes . . . that a single-use catheter should not be reused" while simultaneously opining that "[t]he re-use of a sterile disposable single use only [catheter] by a single patient for non-sterile catheterization after cleaning and drying would be consistent with common medical practices." (*Id.* at 15 (internal quotation and emphasis omitted)).

The Court disagrees that Dr. Haas has conceded that a catheter labeled "single-use" cannot safely be reused under appropriate circumstances. Plaintiffs point to the following language in the Haas Report in support of this argument: "when a medical instrument is labeled 'single use only' that medical instrument is expected to be packaged sterile and is not expected to be re-sterilized for re-use as a sterile instrument in a sterile environment." (*Id.* (quoting Haas Report ¶ 4)). But this statement must be read in context. The Haas Report goes on to say, in the next sentence, that it is "a common medical practice to us a sterile instrument for non-sterile procedures and to clean the instrument for re-use by the same patient for re-

- 14 -

use in future non-sterile procedures." (Dkt. 235 at ¶ 4). Dr. Haas expanded on this opinion at his deposition, explaining that reuse of a catheter is "always in a nonsterile environment because the catheterization process itself is a nonsterile process" and "[t]here is no sterilization involved in the procedure of self-catheterization." (Dkt. 262-1 at 23). There is no contradiction in Dr. Haas acknowledging on the one hand that a single-use catheter could not properly be reused for a sterile procedure and opining on the other hand that it can properly be reused for self-catheterization, which is a non-sterile procedure.

Further portions of Dr. Haas's deposition confirm this reading of the cited portion of the Haas Report. Dr. Haas testified that "[t]he catheters initially are in a sterile container. . . . Once they are opened, there is no longer any sterilization. The concept of sterilization no longer applies to either the procedure or the environment or the site. This is called clean intermittent catheterization . . . [a]nd there is no claim in the literature that sterility is required even with the catheters that are for single use."[5] (*Id.* at 28). Dr. Haas specifically stated that he "would not expect any sterile procedures . . . to be done in [a prison] cell because that is not a requirement for" CISC. (*Id.* at 26). Instead, Dr. Haas opined that the key "requirement is to wash and

---

[5]    During his deposition, Dr. Haas also reiterated his opinion that the frequency of catheterization primarily influences the occurrence of UTIs. (Dkt. 262-1 at 61 ("[W]hat is really important with the emptying of the bladder, regardless of whether you use the catheter once and throw it away or whether you're reusing that same catheter . . . is the frequency to keep the bladder volumes low. And if the inmates do not catheterize themselves sufficiently . . . then regardless of whether [they] use a catheter once or more than once, those individuals will be prone to get infections.")).

cleanse the catheter prior to the next usage." (*Id*. at 27). This testimony is fully consistent with the statement in the Haas Report that a single-use catheter would not be expected to be re-sterilized and reused in a sterile procedure.

Plaintiffs also argue that Dr. Haas "specifically conceded that a single-use catheter should not be reused" at his deposition, pointing to the following exchange:

> Q. Would you define for me the difference between single-use and multiple-use catheters?
>
> A. There is -- so the definition lies not in the catheter itself. It lies in the fact whether a catheter is repeatedly used. A single-use catheter -- in my understanding, the definition of a single-use catheter is used once and then no longer used again.

(Dkt. 260-3 at 15 (emphasis omitted); *see* Dkt. 262-1 at 73-74). Again, the Court disagrees with Plaintiffs' reading of Dr. Haas's testimony. Immediately after the passage cited by Plaintiffs' counsel, Dr. Haas went on to testify that "you can have a catheter used once and throw it away. And then you can have a catheter that is reused time after time. There may not be any intrinsic differences between the catheters themselves or it may be an entirely different catheter." (Dkt. 262-1 at 74). Dr. Haas further explained that there is no regulation regarding the labeling of a catheter as "single-use" or "multiple-use." (*Id*.). In context, Dr. Haas was not, as Plaintiffs argue, conceding that a catheter labeled "single-use" could only safely be used one time. He was opining that there is no consistent structural difference between a catheter labeled "single-use" and a catheter labeled "multiple-use."

Plaintiffs go on to argue that "the disconnect in Haas's opinions and Report appears to be a result of the fact that Haas's opinion is not based on a reliable

application of reliable scientific principles and methods" and that Dr. Haas "has not completed any scientific study of the catheters used or the conditions in which they were used to inform his opinion" but has instead only "review[ed] a handful of publications." (Dkt. 260-3 at 15-16). The Court is unpersuaded by this argument for multiple reasons. Initially, as explained above, there is no "disconnect" between Dr. Haas's opinions and the Haas Report, because the "contradictions" identified by Plaintiffs are not truly contradictions when read in context.

Further, Dr. Haas was not required to perform a formal study on the catheters at issue here in order to form a sufficiently reliable opinion. *See Amorgianos,* 303 F.3d at 266 ("This is not to suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions."); *McCullock*, 61 F.3d at 1043 (affirming admission of medical expert testimony even where the expert physician "could not point to a single piece of medical literature" supporting his opinion); *Valentin v. New York City*, No. 94 CV 3911 (CLP), 1997 WL 33323099, at *21 (E.D.N.Y. Sept. 9, 1997) ("The mere fact that an expert's opinions are not based on formal studies does not make the opinions inadmissible."). Dr. Haas has based his opinions on his decades of experience as a practicing urologist, which includes having counseled close to 100 incarcerated individuals regarding self-catheterization. (*See* Dkt. 262-1 at 32). The flexible inquiry required under Rule 702 permits expert witnesses to base their testimony on practical experience. *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 341 (N.D.N.Y. 2017). Indeed, "in many

cases, the reliability inquiry may . . . focus upon personal knowledge and experience of the expert." *Id.* (citation omitted).

Dr. Haas has also supplemented his experience as a practicing urologist with reference to supporting publications, including the NHS Guidelines. However, as noted above, Plaintiffs argue that the NHS Guidelines actually contradict rather than support the Haas Report. (Dkt. 260-3 at 8; *see* Dkt. 235 at 1, 131). Specifically, Plaintiffs contend that Dr. Haas selectively quotes the NHS Guidelines and ignores the fact that the NHS Guidelines say that "[s]ingle-use catheters . . . are designed for single use[.]" (Dkt. 260-3 at 8 (emphasis omitted), 16).

As a preliminary matter, "[u]nder the law of the case doctrine, when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless cogent and compelling reasons militate otherwise." *Allah v. Adams*, 573 F. Supp. 3d 904, 910 (W.D.N.Y. 2021) (quotations omitted). Here, Plaintiffs raised the identical argument regarding the NHS Guidelines in their motion for summary judgment. (*See* Dkt. 242-8 at 12). Judge Siragusa considered and rejected this argument, finding that "even assuming that [Plaintiffs'] critique is accurate," the alleged contradiction "does not show that Haas's overall opinion is unreliable." (Dkt. 254 at 23).

Plaintiffs did not address the law of the case doctrine in their motion papers. When the Court raised the issue at oral argument, Plaintiffs' counsel suggested that the law of the case doctrine would not apply here because Judge Siragusa first held that Plaintiffs had not made a proper motion to preclude under FRE 702, and that

his discussion of the NHS Guidelines was accordingly dicta. The Court is unpersuaded by this argument. A review of Judge Siragusa's Decision and Order makes clear that, notwithstanding any procedural issues with Plaintiffs' arguments regarding the NHS Guidelines, Judge Siragusa considered them on the merits and found them unavailing. Alternative holdings are not dicta. *See Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 251 n.4 (2d Cir. 2021) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.") (citation omitted). Plaintiffs have thus identified no basis to disturb Judge Siragusa's ruling that Plaintiffs' arguments regarding the NHS Guidelines go "to the weight, and not the admissibility, of Haas's report." (Dkt. 254 at 22).

Although the law of the case doctrine alone provides an adequate basis to dispose of Plaintiffs' NHS Guidelines argument, the Court further notes that there is no irreconcilable conflict between the NHS Guidelines and Dr. Haas's opinions. The NHS Guidelines state that CISC "is a clinically clean procedure undertaken by the patient" and "is the gold standard in bladder management." (Dkt. 242-7 at 4). They go on to say that patients may use various types of catheters to carry out CISC, including "[s]ingle-use sterile catheters" that are "designed for single use[.]" (*Id.* at 7). The NHS Guidelines also say that "UTI may develop if the catheter becomes contaminated or CISC is not frequent enough" and that "[i]f a patient who is self-catheterizing is admitted to the hospital, they should use a new catheter on each occasion because of the increased risk of infection." (*Id.* at 13-14).

Plaintiffs cite no language in the NHS Guidelines stating that it is not medically acceptable to reuse catheters labeled single-use. The NHS Guidelines say only that catheters labeled single-use are "designed" for single-use, which is not equivalent to a statement that it is medically unacceptable to reuse such catheters. As Plaintiffs acknowledge in their reply, the label a manufacturer applies to a product does not necessarily define its medically acceptable use. (*See* Dkt. 263 at 8-9); *see, e.g., U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK), 2009 WL 1456582, at *6 (E.D.N.Y. May 22, 2009).

For all these reasons, the Court finds that Dr. Haas's opinion is supported by sufficiently reliable data and methodology, in accordance with the standard discussed above. [6] *See Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, 574 F. Supp. 3d 197, 201 (S.D.N.Y. 2021) ("In light of the liberal admissibility standards of the [FRE], exclusion of expert testimony is warranted only when the district court finds serious flaws in reasoning or methodology. Otherwise, if an expert's testimony falls within the range where experts might reasonably differ, the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court.") (quotations and citation omitted).

---

[6] The Court draws the same conclusion regarding Dr. Haas's opinion about the importance of frequent CISC in preventing UTIs. Plaintiffs did not directly address this argument in their motion papers. When asked about this opinion during oral argument, Plaintiffs' counsel generally asserted that the opinion is incorrect. But Plaintiffs' disagreement with Dr. Haas's opinion is not a basis for preclusion.

### D.      Factual Basis for the Opinions

Plaintiffs also contend that Dr. Haas's opinion is "inadmissible under Rule 702(b) because it is not based on sufficient facts and data." (Dkt. 260-3 at 16). They argue that Dr. Haas lacks knowledge of key facts, such as what instructions Plaintiffs received about reusing catheters, first-hand knowledge of the conditions in Plaintiffs' individual prison cells, and Plaintiffs' medical records showing chronic UTIs. (*See id.* at 10-11, 17).[7] Plaintiffs argue that Dr. Haas was required to have this knowledge to offer a "useful or reliable expert opinion" and that his lack of such knowledge means his report is not based on any facts, data, or reliable principles and methods. (*Id.* at 10-12, 17). The Court is unpersuaded by these arguments.

Initially, while Plaintiffs' argument assumes that these "key facts" are undisputed, the discussion between the Court and counsel during oral argument made clear during that at least some are in dispute.[8] These disputed facts include

---

[7]      Plaintiffs also suggest that Dr. Haas has "never . . . seen or reviewed his own Expert Disclosure in this case[.]" (Dkt. 260-3 at 11). The conclusion is not borne out by the record. During his deposition, Dr. Haas exhibited confusion over the form in which his expert disclosure had been filed with the Court. (*See* Dkt. 262-1 at 72). Dr. Haas described it as a "version control problem" and noted that he did not know if Plaintiffs' counsel was referring to the same document he was. (*Id.* at 72-72). However, Dr. Haas did not indicate that he was not substantively familiar with the contents of the expert disclosure.

[8]      Plaintiffs' theory of the case rests on the belief that their UTIs were caused by reusing catheters labeled single-use. Plaintiffs contend that if Dr. Haas had reviewed Plaintiffs medical records, he would have "observed that Plaintiffs suffered from chronic [UTIs] and other injuries due to DOCCS' policies of forcing Plaintiffs to reuse single-use catheters." (Dkt. 260-3 at 11). But these are disputed fact questions that must be decided by a jury, not by this Court. Again, the Court's determination of the admissibility of Dr. Haas's expert testimony is distinct from an assessment of the merits of his conclusions. *See Amorgianos*, 303 F.3d at 266.

whether Plaintiffs had the means to perform CISC, such as running hot water, soap, and a clean place to dry their catheters. During oral argument, Defendants' counsel made clear that it is Defendants' position that Plaintiffs had access to such means. Dr. Haas is entitled to rely on that contention in forming his opinions. *Simmons v. Garland*, No. 21-CV-1728-SJB, 2024 WL 1468239, at *2 (E.D.N.Y. Mar. 20, 2024) ("An expert is permitted to accept a party's version of events in drawing conclusions. If that party's version of events turns out to be untrue, unreliable, or lacking in evidentiary basis, then the expert's opinions fall away. . . . And as for not speaking to P[laintiff]'s mother or conducting a more thorough investigation, these arguments go to the weight of [the plaintiff's expert]'s testimony, not its admissibility. The same is true for any argument that his testimony was self-contradictory or that his deposition contradicts his expert report.") (citations omitted); *see also Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2023 WL 5670711, at *25 (S.D.N.Y. Mar. 6, 2023) ("Expert witnesses may rely on their party's facts, even where facts are in dispute.").

Moreover, "[u]nlike a fact witness, an expert witness need not have personal knowledge of the facts of the case, so long as his or her expert opinion is based on sufficient facts or data and is the product of reliable principles and methods." *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW), 2016 WL 1169508, at *3 n.3 (S.D.N.Y. Mar. 21, 2016) (quotations omitted); *see also Walker v. Schult*, 365 F. Supp. 3d 266, 288 (N.D.N.Y. 2019) ("However, it has long been accepted that an expert witness may voice an opinion based on facts concerning the events at

issue in a particular case even if the expert lacks first-hand knowledge of those facts.")
(quotation and alteration omitted). The fact that Dr. Haas did not personally observe
the prison cells and conditions at issue here does not render his opinions
inadmissible.

Plaintiffs' arguments also appear to be based on a misapprehension as to the
content of Dr. Haas's opinions. Plaintiffs contend that Dr. Haas "is in no position to
offer any kind of reliable opinion about whether the Plaintiffs and class members
were actually able to safely wash and reuse the catheters at issue in this case." (Dkt.
260-3 at 17-18). But Dr. Haas has not offered an opinion on whether the specific
Plaintiffs here could safely perform CISC in their cells. He has opined that "a
disposable PVC catheter may be safely re-used by the same patient for weekly
intermittent self-catheterization, provided the patient does not require sterile
catheterization, the catheter is cleaned with soap and water and permitted to dry
after each use and the catheter remains in good condition." (Dkt. 235 at ¶ 15)
(emphasis added). Of course, it will be the function of the factfinder to determine
whether Dr. Haas's opinion is applicable to the conditions Plaintiffs actually
experienced while in the custody of DOCCS.

### E.    Helpfulness to the Trier of Fact

Finally, the Court finds that Dr. Haas's opinion may be helpful to the factfinder
in this case and that there is no basis for exclusion under FRE 401 or 403. The
disagreement amongst the parties and their experts about the reuse of catheters
labeled single-use, and the technical terminology used to describe catheter use, all

indicate that Dr. Haas's opinions will be "helpful to the trier of fact because they relate to a technical, medical issue that would be beyond the ken of a lay person." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016); *see United States v. Delva*, No. 12 CR. 802 KBF, 2014 WL 4460360, at *9 (S.D.N.Y. Sept. 10, 2014) ("To the extent that medical terminology is offered during trial, [the defendant's expert] is an appropriate expert to explain the meaning of that terminology to a jury of laypersons. There is an obvious value to the jury having an understanding of the definitions of certain terms not within the typical vocabulary of a layperson."), *aff'd,* 858 F.3d 135 (2d Cir. 2017).

In sum, and for all the reasons set forth above, the Court finds that Dr. Haas is qualified to serve as an expert in this case and that the Haas Report is based on appropriately reliable data and methodology and will help the trier of fact in understanding the evidence in this case. [9] The Court accordingly finds no basis under FRE 702, *Daubert* and its progeny, or other relevant Rules and case law to preclude Dr. Haas's expert testimony and opinions. Plaintiffs' motion seeking such relief is therefore denied.

---

[9]     At oral argument, Plaintiffs' counsel made various arguments regarding the harm that Named Plaintiffs and the members of the class are alleged to have suffered. The Court understands the significance of this case to Plaintiffs. But the issue before the Court at this time is a narrow one that goes only to the question of whether Dr. Haas's opinions and testimony should be excluded from a jury's consideration. The Court is not called upon to reach any conclusions as to the lawfulness of Defendants' policies regarding catheter use or Plaintiffs' ability to safely perform CISC. Those are issues that are squarely within the province of the factfinder.

- 25 -

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to preclude the expert report and testimony of Dr. Haas (Dkt. 260) is denied.

SO ORDERED.

_____

COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:   Rochester, New York
         June 1, 2026